# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| DION JONES, | : | CIVIL ACTION NO. |
| GDC ID # 1026185, | : | 1:13-CV-02021-TWT-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| P. A. CUTSHAW, | : | PRISONER CIVIL ACTION |
| DR. HILL, | : | 42 U.S.C. § 1983 |
| APRIL, Med. Admin., | : | |
| Hays State Prison, | : | |
| LASHARN HUGHES, | : | |
| Executive Director, | : | |
| Georgia Composite Medical Board, | : | |
| Defendants. | : | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Plaintiff, an inmate at Lee State Prison in Leesburg, Georgia, seeks relief under 42 U.S.C. § 1983.  (Doc. 1).  Plaintiff has been granted leave to proceed *in forma pauperis*.  (Doc. 3).  This matter is now ready for an initial screening.

## I.     The Legal Framework

Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks

monetary relief from a defendant who is immune from such relief.  A complaint is frivolous when it "has little or no chance of success"—for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process."  *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted).  To have some chance of success, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1949-50.  To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct."  *Id.* at 1950.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).

## II.   The Complaint

In his complaint, Plaintiff alleges that beginning in August 2011, while he was incarcerated at Hays State Prison ("HSP"),[1] he began to experience severe pain in his throat and right ear and extreme dryness in his throat.  (Doc. 1 at 3, 5).  Physician's Assistant Cutshaw prescribed claritin and an antibiotic, but Plaintiff complained that the medicine did not help.  (*Id.* at 3).  Due to the agonizing pain, Plaintiff "practically pleaded with Cutshaw to help" him.  Cutshaw responded by telling Plaintiff to stay off the internet and by diagnosing his condition as allergic rhinitis, even though Plaintiff had never complained about his nose.  (*Id.* at 4).  Cutshaw denied Plaintiff's request for blood work because "it wouldn't show anything."  (*Id.* at 5).  Ultimately, Plaintiff claims, Cutshaw, Dr. Hill, and Medical Director April (last name not provided) called him into a room at the HSP medical department and told him that they were not going to send him to an ear-nose-and throat ("ENT") specialist or treat his condition, so he should "stop asking."  (*Id.* at 4).

In November 2011, Plaintiff was transferred to Baldwin State Prison ("BSP").  (*See* Doc. 2 at 9).  He wrote a letter to Lasharn Hughes at the Georgia Medical

---

[1]  Hays State Prison is located in Chattooga County, Georgia, within the jurisdiction of the Rome Division of this Court.

AO 72A
(Rev.8/82)

Examiners Board in Atlanta, Georgia, asking for assistance with the BSP medical personnel.  He was sent to an ENT specialist, "who claimed to see nothing."  (Doc. 1 at 5).  Finally, at Macon State Prison, to which he was transferred in September 2012, he "was accidentally given a CAT scan," which returned a positive result for an as yet unidentified condition.  (*Id.* at 4; *see* Doc. 2 at 7).

Plaintiff asserts that his condition has grown progressively worse since August 2011, with "now swollen gland(s) in [his] throat, some sort of [k]nots," and daily dryness, burning and pain.  (Doc. 1 at 4).  He contends that the neglect he has experienced in the Georgia prison system can only derive from either "pure disregard for the responsibilities" of the medical personnel employed there or a desire "to protect the state and/or [department of] corrections medical budget."  (*Id.* at 6).  Plaintiff seeks an order requiring Hughes to ensure that the Georgia Department of Corrections ("GDC") medical personnel "perform a professional and complete diagnosis of [his] medical issue[, s]tarting with but not limited to full/complete blood work."  (*Id.* at 4). He also wants the HSP Defendants—Cutshaw, Hill, and April—held responsible for failing to diagnose and treat him before his condition became severe and possibly life threatening.  (*Id.* at 7).

4

## III.   Discussion

### A.   Deliberate Indifference to a Serious Medical Condition

The Eighth Amendment prohibits indifference to a serious medical need so deliberate that it "constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotations omitted). The Supreme Court has recognized "the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs . . . . [D]enial of medical care may result in [unnecessary] pain and suffering . . . . [that] is inconsistent" with the view that it is "just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." *Id.* at 103-04 (citations and internal quotations omitted).

To demonstrate deliberate indifference, a plaintiff must show both "an objectively serious medical need" and the defendant's subjective knowledge of, and more than negligent disregard of, that need. *Farrow v. West*, 320 F.3d 1235, 1243, 1245 (11th Cir. 2003). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (internal quotations omitted). "In the

5

alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (citation and internal quotations omitted). A plaintiff may establish deliberate indifference by showing that a prison official failed or refused to provide care for his serious medical condition, delayed care "even for a period of hours," chose "an easier but less efficacious course of treatment," or provided care that was "grossly inadequate" or "so cursory as to amount to no treatment at all." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Here, Plaintiff alleges that the medical personnel at each Georgia state prison where he has been housed, and in particular at Hays State Prison, failed to diagnose and treat his condition, whose symptoms he alleges have become more severe due to neglect, and now may be life threatening. It thus appears that his claims against the HSP Defendants may be sufficient to allow them to proceed, although the undersigned expresses no opinion regarding those claims. However, for the reasons set forth below, Plaintiff may not proceed against Lasharn Hughes in this § 1983 action.

AO 72A
(Rev.8/82)

## B.     Supervisor Liability

The Court takes judicial notice that "[t]he Georgia Composite Medical Board

is the agency that licenses physicians [and] physician assistants . . . . The Medical

Board investigates complaints and disciplines those who violate The Medical Practice

Act or other laws governing the professional behavior of its licensees." *See*

http://medicalboard.georgia.gov/ purpose-and-mission-statement (last visited Sept. 20,

2013).   Thus, it appears that Hughes, the Georgia Composite Medical Board's

Executive Director, is not a GDC official.  It also appears, from this fact and from

those alleged in Plaintiff's complaint, that Hughes played no role in the GDC medical

staff's decisions about Plaintiff's treatment.

In addition, even if Hughes were a GDC official, it is well-established "that

supervisory officials are not liable under § 1983 for the unconstitutional acts of their

subordinates on the basis of respondeat superior or vicarious liability."  Instead, a

supervisor is individually liable only when he "personally participates in the alleged

unconstitutional conduct or when there is a causal connection between [his] actions . . .

and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360

(11th Cir. 2003).  This causal connection can be established by showing that (1) the

supervisor knew about and failed to correct a widespread history of abuse, or (2) he

7

had a custom or policy that resulted in a constitutional violation, or (3) the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotations omitted). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone*, 326 F.3d at 1360.

Therefore, even if Hughes were both a GDC official and a supervisor over the GDC medical staff—and it appears that she is not—her status as such would not be a sufficient basis for a § 1983 claim against her. Furthermore, by Plaintiff's own admission, after he left HSP he was sent to an ENT specialist and he also received a CAT scan. Accordingly, based on the history of Plaintiff's own treatment after he left Hays State Prison, there appears to be insufficient factual support for a claim against any supervisor of the GDC medical staff, which claim would require a showing of either a widespread history, or a policy or custom, of neglecting the serious medical needs of Georgia state prisoners. *See id.*

## IV.   Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Lasharn Hughes be **DISMISSED** and that this action be **TRANSFERRED** to the Rome Division of this

8

Court for all further proceedings because Plaintiff's claims against the remaining

Defendants involve events that occurred at Hays State Prison, which is located within

the Rome Division.[2]

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this 23rd day of September, 2013.

_____

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court notes that Baldwin, Macon and Lee State Prisons, where Plaintiff has been incarcerated since leaving Hays State Prison, are located within the jurisdiction of the United States District Court for the Middle District of Georgia.  Thus, a challenge to Plaintiff's medical treatment at any of those prisons should be filed in that court.

9